**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

MARTIN MARTINEZ,

               Plaintiff,

    v.

UNIVERSITY MEDICAL CENTER,

               Defendant.

Case No. 2:13-CV-00003-APG-VCF

**ORDER**

(Dkt. #22)

      Defendant University Medical Center ("UMC") seeks summary judgment on Plaintiff Martin Martinez's claims for disability discrimination and failure to accommodate under the Americans with Disabilities Act ("ADA"), retaliation under the ADA, and state tortious discharge. UMC argues I should dismiss Martinez's ADA claims related to events Martinez never reported to the Equal Employment Opportunity Commission ("EEOC") because Martinez failed to exhaust administrative remedies. UMC also urges me to grant summary judgment on Martinez's ADA claims arising from a December 1, 2011 incident which Martinez did report to the EEOC, because at that time Martinez's injury was considered temporary and he therefore was not covered by the ADA. UMC further asserts that Martinez suffered no adverse employment action, and Martinez did not request an accommodation in association with the December 1 incident. Additionally, UMC argues no compensatory or punitive damages are available for an ADA retaliation claim as a matter of law, and punitive damages are not awardable against UMC as a governmental entity for any claim.

      Martinez responds that he adequately exhausted all of his ADA claims. Martinez contends he indicated in his EEOC charge that he was complaining about continuing violations, and he kept the EEOC apprised of developments in his case, including his termination. Martinez thus argues his allegations about events after the December 1 incident reasonably could have been expected to grow out of the EEOC's original investigation. As to the December 1 incident, Martinez argues he was covered by the ADA because the anti-retaliation provision protects any

individual who opposes an act or practice that violates the ADA, even if that person is not

disabled.  Martinez also contends he suffered an adverse employment action because he was

suspended when he refused to perform activities that violated his doctor's work restrictions.

Martinez disputes that compensatory and punitive damages are not awardable for ADA retaliation

claims.  Martinez abandons his state law tortious discharge claim.  (Dkt. #25 at 5 n.2.)  I grant in

part and deny in part UMC's motion.

## I. Background

Martinez worked as a warehouse technician at UMC, a job which required heavy lifting.

(Dtk. #22-1 at 1; Dkt. #25-1 at 2; Dkt. #26-1 at 3.)  On August 4, 2011, Martinez suffered a

hernia and an L5-S1 disc protrusion while lifting boxes in the warehouse.  (Dkt. #22-1 at 1; Dkt.

#25-1 at 2.)  Martinez was placed on temporary modified duty with no lifting over 10 pounds, no

repetitive bending, and no climbing.  (Dkt. #22-1 at 2.)  Martinez filed a worker's compensation

claim for these injuries that same date.  (Dkt. #25-1 at 2.)

UMC and Martinez entered into a modified duty work contract to commence on

September 12, 2011.  (Dkt. #22-1 at 5.)  Under the contract, Martinez was given a 90-day

assignment with the central supply department in the clinical lab to perform work consistent with

his doctor's restrictions.  (*Id.*)

On December 1, 2011, Martinez was working in the blood bank mail room, and he began

talking on his cell phone.  (Dkt. #22-1 at 10; Dkt. #22-2 at 1.)  Shortly thereafter, he received a

phone call from Karen Edwards, the manager of pathology.  (Dkt. #22-1 at 10; Dkt. #22-2 at 1.)

Edwards advised Martinez that he needed to perform duties related to the third floor tubing

system.  (Dkt. #22-1 at 11; Dkt. #25-1 at 2.)  Martinez previously had worked with the tubing

system and knew he could not do as Edwards asked because that work strained his back.  (Dkt.

#22-1 at 12; Dkt. #25-1 at 2.)  He told Edwards he would not do those tasks because it would

result in back pain and would violate his doctor's orders.  (Dkt. #22-2 at 1.)  Edwards advised

Martinez that because he could not do the job tasks, he would be transferred.  (Dkt. #22-2 at 1.)

Martinez also states Edwards suspended him.  (Dkt. #25-1 at 2.)  Martinez then contacted

worker's compensation personnel who previously had been helpful to him.  (Dkt. #22-2 at 1.) They advised him to clock out and go home because there was no other light duty for Martinez to perform at the moment, and he would be contacted when something was available.  (*Id.*)

According to Martinez, he remained on suspension from December 1 through January 4, 2012.  (Dkt. #25-1 at 2.)  According to UMC's records, Martinez did not appear for work on December 8, 9, or 14, and he was suspended for three days for his unexplained absenteeism.  (Dkt. #22-2 at 5.)  On December 13, 2011, Martinez sent a letter to James Mumford, director of human resources, complaining about Edwards' conduct and indicating he believed he had been discriminated against on the basis of age, race, and disability.  (Dkt. #22-2 at 1-2, 9.)

On January 13, 2012, Martinez filed a charge of discrimination with the EEOC.  (Dkt. #22-2 at 9.)  Martinez marked the boxes on the charge form to indicate he was alleging discrimination based on national origin, disability, and retaliation.  (*Id.*)  Martinez identified the beginning date of the alleged discriminatory conduct as December 1, 2011, and the latest date as the date he filed the charge.  (*Id.*)  Martinez checked the box on the form indicating his charge related to "continuing action."  (*Id.*)

In the fact section of his charge, Martinez described the December 1, 2011 incident regarding Edwards' request that Martinez perform duties that violated his doctor's restrictions and his response that performing the tasks would injure him.  (*Id.*)  On the form, Martinez wrote that Edwards "became angry and suspended me from working in the mail room."  (*Id.*)  He also indicated that he told UMC's human resources about the incident, but there was no investigation, he was told Edwards "did nothing wrong," and Martinez would remain on suspension.  (*Id.*)

On January 5, 2012, UMC and Martinez entered into another modified duty work contract, placing Martinez in the engineering department.  (Dkt. #22-2 at 10.)  Martinez worked light duty in the engineering department through April 4, 2012.  (Dkt. #25-1 at 3.)  Martinez requested leave under the Family and Medical Leave Act from April 5 to June 4, which UMC approved.  (Dkt. #22-2 at 11-12; Dkt. #22-3 at 1.)

1    On June 5, 2012, UMC sent Martinez a letter indicating that because his medical

2    condition remained unchanged and Martinez confirmed he would not be able to return to work,

3    Martinez was "a candidate for a medical separation." (Dkt. #22-3 at 2.)  Under UMC's medical

4    separation process, UMC would "conduct a 30 working day job search for available alternative

5    work for which [Martinez] may qualify and can perform with or without an accommodation."

6    (Dkt. #22-3 at 2.)  Martinez applied for numerous jobs at UMC, but he did not obtain any of those

7    jobs. (Dkt. #22-1 at 15-28; Dkt. #22-3 at 18; Dkt. #25-1 at 3-4.)

8    On July 23, 2012, UMC indicated that Martinez had exhausted all available leave and was

9    not able to accept another position. (Dkt. #22-3 at 4.)  UMC therefore suspended Martinez

10   "pending medical separation." (*Id.*)  UMC advised Martinez that pursuant to the applicable

11   collective bargaining agreement, Martinez had ten days to file a grievance or his employment

12   would terminate. (*Id.*)  No grievance was filed and UMC terminated Martinez's employment on

13   August 7, 2012. (*Id.* at 5.)

14   Martinez did not file a separate charge of discrimination with the EEOC relating to his

15   efforts at finding another job at UMC that would reasonably accommodate his disability, nor did

16   he file a charge relating to his separation from employment.  Martinez contends he kept in contact

17   with the EEOC regarding his January 13 charge, and forwarded to the EEOC documents relating

18   to his termination. (Dkt. #25-1 at 5; Dkt. #26 at 23-31.)  On September 21, 2012, Martinez

19   requested a right to sue letter from the EEOC. (Dkt. #25-1 at 5; Dkt. #26 at 33.)  The EEOC

20   issued a right to sue letter on October 5, 2012. (Dkt. #25-1 at 6; Dkt. #26 at 35.)

21   Martinez filed the present lawsuit on January 2, 2013 asserting three claims. (Dkt. #1.)

22   First, Martinez brings a claim for disability discrimination under the ADA arising from the

23   December 1 incident, his efforts to find another position at UMC, and his eventual separation

24   from employment.  Second, Martinez alleges UMC retaliated against him for his refusal to

25   perform work that would violate his doctor's restrictions on December 1, 2011, and for filing his

26   January 2012 EEOC charge.  Finally, Martinez alleges UMC discharged him for filing a worker's

27   compensation claim in violation of Nevada state law.

28

1

## II.  Exhaustion

2        A plaintiff must file a timely charge with the EEOC or a state agency empowered to

3   investigate such charges before bringing suit on an ADA claim in federal court; otherwise the

4   claim is statutorily barred as unexhausted. *Nilsson v. City of Mesa*, 503 F.3d 947, 953 (9th Cir.

5   2007); *Josephs v. Pac. Bell*, 443 F.3d 1050, 1061 (9th Cir. 2006); *see also* 42 U.S.C. § 2000e-

6   5(b).  The Court may not consider incidents of discrimination not included in an EEOC charge

7   "unless the new claims are like or reasonably related to the allegations contained in the EEOC

8   charge." *Lyons v. England*, 307 F.3d 1092, 1104 (9th Cir. 2002) (quotation omitted).  A claim is

9   like or reasonable related to allegations in an EEOC charge if the claims "fell within the scope of

10   the EEOC's actual investigation or an EEOC investigation which can reasonably be expected to

11   grow out of the charge of discrimination." *Id.* (quotation and emphasis omitted).  To make this

12   determination, the Court considers factors such as "the alleged basis of the discrimination, dates

13   of discriminatory acts specified within the charge, perpetrators of discrimination named in the

14   charge, and any locations at which discrimination is alleged to have occurred." *Freeman v.*

15   *Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) (quotation omitted).

16        The "crucial element" of the charge is its factual statement. *Id.* (quotation omitted).

17   Because EEOC charges are prepared by laymen, the Court construes the charge's language with

18   "utmost liberality." *Id.* (quotation omitted).  However, "there is a limit to such judicial tolerance

19   when principles of notice and fair play are involved." *Id.*  A plaintiff does not have "an unlimited

20   license to extend his claim endlessly beyond the bounds and parameters encompassed by the

21   administrative charge" by asserting his claims would have fallen within the scope of the EEOC's

22   investigation which reasonably could be expected to grow out of the charges. *Thornton v. United*

23   *Parcel Serv., Inc.*, 587 F.3d 27, 32 (1st Cir. 2009).  Allowing unwarranted extensions of the scope

24   of the investigation "would effectively nullify the administrative exhaustion requirement and

25   convert it into a simple notice requirement that some claim may be brought, thereby depriving

26   employers of the opportunity to resolve issues at an early stage and rendering the EEOC (and

27   state-level equivalents) superfluous." *Id.*; *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536

28

1    U.S. 101, 113 (2002) (stating that "[e]ach discrete discriminatory act starts a new clock for filing

2    charges alleging that act").

3         Here, Martinez claims that UMC (1) failed to reasonably accommodate his disability by

4    finding him a permanent light duty job or by giving him an indefinite leave of absence, (2)

5    discriminated against him by terminating him, and (3) retaliated against him for filing the January

6    2012 EEOC charge.  These claims are not sufficiently like or reasonably related to the allegations

7    in Martinez's January 2012 EEOC charge to exhaust these claims.  Although all of his claims

8    allege disability discrimination, the EEOC charge referred only to the December 1, 2011 incident

9    and UMC's alleged initial refusal to investigate the December 1 incident.  The perpetrator

10   identified in the charge was Edwards in the pathology department, and Martinez stated in the

11   charge that he had been transferred to another department on January 5.  Martinez selected the

12   "continuing violation" box on the charge form, but he did not allege facts supporting a pattern or

13   practice of alleged discriminatory conduct.  Martinez's charge referenced a single incident by a

14   manager in a department in which he no longer worked by the time he filed his charge.  A

15   reasonable EEOC investigation of Martinez's charge would not have encompassed the discrete

16   acts related to Martinez's claims that UMC subsequently failed to accommodate Martinez's

17   disability as Martinez attempted to find another job he could perform at UMC, and then

18   terminated his employment when he could not find a suitable position.

19        Martinez's argument that he kept the EEOC apprised of developments in relation to his

20   employment is insufficient to satisfy the exhaustion requirement.  Martinez did not amend his

21   original charge and he presents no authority for the proposition that providing documents to the

22   EEOC suffices to put the EEOC on notice that he is filing new charges related to different,

23   discrete acts of alleged discrimination.  Such a rule would allow plaintiffs to avoid requirements

24   for filing a charge, including that the charge be filed "in writing under oath or affirmation," and

25   that the charge be served on the person against whom the charge is made  42 U.S.C. §§ 2000e-

26   5(b), (e).  Additionally, Martinez deprived the EEOC of an opportunity to investigate any new

27

28

1  charges.  Martinez provided the EEOC documents related to his termination on September 10,

2  2012, and requested a right to sue letter from the EEOC eleven days later.  (Dkt. #26 at 23-32.)

3       Exhaustion is required not only to advise the EEOC of the charges, but also to put the

4  employer on notice of alleged discrimination and to allow the employer an opportunity to address

5  any such issues before the matter escalates to litigation.  *See Leong v. Potter*, 347 F.3d 1117,

6  1122 (9th Cir. 2003).  Martinez's decision not to file charges in relation to the alleged failure to

7  accommodate and subsequent termination did not provide UMC any notice that he was claiming

8  disability discrimination in relation to these actions or inactions on UMC's part until Martinez

9  filed the Complaint in this action.

10       At bottom, Martinez is contending that because he made one charge of disability

11  discrimination about a single incident, any subsequent acts of alleged disability discrimination by

12  the same employer, even if of a different character and initiated by different employees in

13  different departments in response to different factual scenarios, would fall within the scope of the

14  EEOC's investigation which reasonably could be expected to grow out of the initial charge.  Such

15  a rule would obviate the exhaustion requirement and deprive both the EEOC and the employer of

16  the opportunity to investigate and respond to new charges.  Consequently, Martinez's ADA

17  claims related to events after the December 1, 2011 incident are barred as unexhausted.

18  **III.  December 1, 2011 Incident**

19       In counts one and two of his Complaint, Martinez alleges UMC discriminated and

20  retaliated against him by suspending him in response to his refusal to perform work outside his

21  doctor's restrictions after he suffered a disabling injury.  UMC argues Martinez was not disabled

22  at the time of the December 1, 2011, because his injury was considered temporary at that time.

23  UMC further asserts that even if Martinez was covered by the ADA, he did not request an

24  accommodation in association with the December 1 incident, and he suffered no adverse

25  employment action.  Finally, UMC argues no compensatory or punitive damages are available for

26  an ADA retaliation claim as a matter of law.

27

28

1    Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories

2    and admissions, and affidavits demonstrate "there is no genuine dispute as to any material fact

3    and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c).  A fact is

4    material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty*

5    *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is genuine if "the evidence is such that a

6    reasonable jury could return a verdict for the nonmoving party." *Id.*

7    The party seeking summary judgment bears the initial burden of informing the court of the

8    basis for its motion, and identifying those portions of the record that demonstrate the absence of a

9    genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden

10   then shifts to the non-moving party to go beyond the pleadings and set forth specific facts

11   demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato*

12   *Johnson*, 212 F.3d 528, 531 (9th Cir. 2000).  The Court views all evidence and inferences which

13   may be drawn therefrom in the light most favorable to the non-moving party. *James River Ins.*

14   *Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

15   Title 42 U.S.C. § 12112(a) prohibits discrimination against "a qualified individual on the

16   basis of disability in regard to job application procedures, the hiring, advancement, or discharge

17   of employees, employee compensation, job training, and other terms, conditions, and privileges of

18   employment."  To prevail on a disability discrimination claim under § 12112(a), a plaintiff must

19   show "he is (1) disabled under the Act, (2) a qualified individual with a disability, and (3)

20   discriminated against because of the disability." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974,

21   988 (9th Cir. 2007) (citation and internal quotation marks omitted).

22   The ADA also prohibits retaliation "against any individual because such individual has

23   opposed any act or practice made unlawful by this chapter or because such individual made a

24   charge, testified, assisted, or participated in any manner in an investigation, proceeding, or

25   hearing under this chapter." 42 U.S.C. § 12203(a).  To establish a prima facie case of retaliation

26   under the ADA, the plaintiff must show that: (1) he engaged in a protected activity; (2) he

27   suffered an adverse employment action; and (3) a causal link exists between the protected activity

28

and the adverse employment action. *Brown v. City of Tucson*, 336 F.3d 1181, 1186-87 (9th Cir. 2003).

### A. Temporary Disability

UMC argues Martinez was not covered by the ADA at the time of the December 1 incident because his injury at that point was considered temporary. Martinez does not respond to this argument. However, UMC has failed to meet its initial burden of establishing it is entitled to judgment as a matter of law on this basis. UMC relies on case law that pre-dates the 2008 amendments to the ADA. "Under the 2008 amendments, a person with an impairment that substantially limits a major life activity, or a record of one, is disabled, even if the impairment is 'transitory and minor' (defined as lasting six months or less)." *Gogos v. AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1172-73 (7th Cir. 2013) (citing 42 U.S.C. § 12102(3)(B); 29 C.F.R. § 1630.2(j)(1)(ix)). *See also* 29 C.F.R. Pt. 1630, App. at Section 1630.2(j)(1)(ix) ("[A]n impairment does not have to last for more than six months in order to be considered substantially limiting under the first or the second prong of the definition of disability. For example, as noted above, if an individual has a back impairment that results in a 20-pound lifting restriction that lasts for several months, he is substantially limited in the major life activity of lifting, and therefore covered under the first prong of the definition of disability."). By failing to address the 2008 amendments, UMC has not met its initial burden of establishing Martinez was not covered by the ADA at the time of the December 1 incident due to a temporary injury. I therefore deny UMC's motion on this basis.

### B. Reasonable Accommodation

Discrimination under the ADA can include an employer "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). Generally, an employee must initially request an accommodation. *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1188 (9th Cir. 2001). However,

1   under some circumstances, "the interactive process for finding a reasonable accommodation may

2   be triggered by the employer's recognition of the need for such an accommodation, even if the

3   employee does not specifically make the request." *Id.* This duty may be triggered if the employer

4   "(1) knows that the employee has a disability, (2) knows, or has reason to know, that the

5   employee is experiencing workplace problems because of the disability, and (3) knows, or has

6   reason to know, that the disability prevents the employee from requesting a reasonable

7   accommodation." *Id.* (quotation omitted).

8       UMC argues no genuine issue of fact remains that Martinez did not request a reasonable

9   accommodation in relation to the December 1 incident, and, in any event, the decision to transfer

10   him to another department where he could perform light duty work was a reasonable

11   accommodation.  It is unclear whether Martinez even asserts a claim for discrimination based on

12   a failure to accommodate in relation to the December 1 incident, as Martinez does not respond to

13   this argument.  There is no evidence Martinez had a disability which prevented him from

14   requesting a reasonable accommodation.  Accordingly, UMC had no obligation to initiate the

15   interactive process in relation to the December 1 incident.  Martinez points to no evidence in the

16   record raising a genuine issue of material fact that he requested an accommodation in relation to

17   the December 1 incident, and he presents no legal argument in support.  I therefore will grant

18   UMC's motion for summary judgment on Martinez's ADA claim in relation to the December 1

19   incident to the extent it is based on a failure to provide a reasonable accommodation.

20                    **C.  Adverse Employment Action**

21       UMC contends it did not suspend Martinez and its decision to transfer him from the lab

22   does not constitute an adverse employment action.  Martinez responds that Edwards suspended

23   him when he refused to perform work that would violate his doctor's work restrictions.

24       A suspension is an adverse employment action. *City of Tucson*, 336 F.3d at 1187; *Raad v.*

25   *Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1196 (9th Cir. 2003).  UMC contends it did

26   not suspend Martinez based on his refusal to perform work in the lab, and UMC argues Martinez

27   was on leave for most of the time he alleges he was suspended.  UMC admits it suspended

28

1    Martinez for three days based on Martinez failing to show up at a new assignment.  (Dkt. #22-2 at

2    5.)  However, UMC presents no evidence that it advised Martinez of the new assignment.

3    Moreover, Martinez states, under oath, that Edwards suspended him and that he remained on

4    suspension from December 1, 2011 through January 4, 2012.  (Dkt. #25-1 at 2.)  At this stage of

5    the proceedings, I must accept Martinez's version of the facts as true.  I therefore deny UMC's

6    motion to the extent it is based on lack of an adverse employment action.

7                          **D.  Compensatory and Punitive Damages**

8           Compensatory and punitive damages are not available for an ADA retaliation claim.

9    *Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1264-70 (9th Cir. 2009) (citing 42 U.S.C.

10   §§ 12203(c), 2000e-5(g)(1)), 1981a(a)(2)).  Additionally, punitive damages may not be recovered

11   against a government, government agency, or political subdivision for an ADA violation. 42

12   U.S.C. § 1981a(b)(1).  UMC is a governmental entity.  (Dkt. #1 at 1-2; Dkt. #6 at 2.)

13   Accordingly, I grant summary judgment in UMC's favor to the extent that Martinez cannot

14   recover compensatory or punitive damages with respect to his retaliation claim, and cannot

15   recover punitive damages with respect to his disability discrimination claim.

16                          **E.  State Law Tortious Discharge**

17          Martinez has abandoned his state law tortious discharge claim.  I therefore grant summary

18   judgment in UMC's favor on Martinez's state law tortious discharge claim.

19                          **F.  Insufficiently Briefed Issues**

20          In its motion, UMC sets forth as undisputed facts that there is no evidence Martinez

21   engaged in ADA protected activity and there is no evidence that a non-disabled employee was

22   treated more favorably.  (Dkt. #22 at 14.)  UMC also states that there is no evidence the transfer

23   decision was discriminatory or retaliatory.  (*Id.* at 15.)  However, UMC cites no law regarding a

24   prima facie retaliation claim, what constitutes protected activity under the ADA, or pretext and

25   the burdens at summary judgment on a retaliation claim.  Additionally, UMC does not explain the

26   significance of its statement that there is no evidence non-disabled employees were treated more

27   favorably.  To the extent UMC intended to raise issues regarding whether Martinez engaged in

28

1  protected activity or established pretext for his retaliation claim, or whether he established

2  disability discrimination in relation to the December 1 incident by showing disparate treatment,

3  UMC failed to file points and authorities in support of these contentions, and therefore consents

4  to denial of the motion.  LR 7-2(a), (d).  Additionally, by failing to present factual and legal

5  support for its motion, UMC failed to meet its initial burden under Rule 56.[1]  I therefore decline

6  to address these issues.

7      **IV.  Conclusion**

8      IT IS THEREFORE ORDERED that Defendant University Medical Center's Motion for

9  Summary Judgment (Dkt. #22) is hereby GRANTED in part and DENIED in part as set forth

10  more fully in this Order.

12      DATED this 26th day of January, 2015.

14                  ANDREW P. GORDON
                UNITED STATES DISTRICT JUDGE

---

[1] Martinez's response brief similarly lacked factual and legal support, but because UMC failed to meet its initial burden with respect to these issues, I need not address them.